2020 IL App (1st) 171273-U

No. 1-17-1273

Order filed September 24, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 13556 |
| | ) | |
| TIMOTHY MOBLEY, | ) | Honorable |
| | ) | Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the denial of defendant's motion for leave to file a successive postconviction petition where he failed to demonstrate the requisite prejudice to satisfy the cause and prejudice test.

¶ 2   Defendant Timothy Mobley appeals from the circuit court's denial of his motion for leave to file a successive postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant argues that we should remand his successive postconviction petition for second-stage proceedings where he sufficiently established

the cause and prejudice required to excuse his failure to include that information in his first postconviction petition, which was a non-frivolous claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that it did not charge a witness with possession of cocaine because she cooperated in defendant's case. For the following reasons, we affirm.

¶ 3    Defendant, Amotto Jackson, Chezeray Moore, and Henry Lovett were charged with multiple offenses arising from the death of 19-year-old Kristin Ponquinette on April 17, 1992. Defendant retained private counsel, and following a separate jury trial in 1994, was found guilty of first degree murder, felony murder, aggravated kidnaping, and kidnapping, and sentenced to an extended prison term of 90 years for first degree murder consecutive to 5 years' imprisonment for aggravated kidnaping. We recount the facts only to the extent necessary to resolve the issues raised in this appeal.

¶ 4    At a hearing prior to jury selection, defense counsel asked the State if any offers were made to its female witnesses in exchange for their testimony. The assistant State's Attorney (ASA) responded that one witness, Venus Becom, was charged in juvenile court with aggravated battery and unlawful restraint in connection to the same incident, but that the charges had been nol-prossed prior to any agreements. The ASA stated that the State subsequently entered into an agreement with Becom that it would reinstate her charges in juvenile court and recommend she receive a sentence of probation if she testified at the trials related to Ponquinette's murder. Another witness, Lashonda Wilson, was charged with aggravated battery and unlawful restraint, and the State entered into an agreement with her that if she testified in the trials, it would recommend a sentence of probation.

¶ 5     At trial, Carin Smith testified that one evening in mid-April 1992, she and her friend Sharon Burke went to Cassandra Butler's house where Ponquinette was. When Smith and Burke arrived, Ponquinette said she was leaving. Burke closed the door and said that Ponquinette "wasn't going anywhere." Burke and Butler questioned Ponquinette about calling Burke a "b***" and asked "who [Ponquinette] had been sleeping with," and Burke repeatedly slapped Ponquinette. Then, Burke and Butler cut Ponquinette's hair, bound her hands behind her back, stuffed a sock in her mouth, and placed her in a closet.

¶ 6     Later that night, Becom, Moore, and Terrence Mobley[1] arrived at Butler's house. Ponquinette was untied, the socks were removed from her mouth, and she left the house with Moore and Terrence. Later, Sonya Richardson and Lashonda Wilson arrived, and then left with Becom to look for Ponquinette.

¶ 7     Becom testified that she went with Richardson and Wilson to Moore's garage where they found Jackson, Moore, and Ponquinette. Richardson told them she would make Ponquinette "suck all the brothers' d***," and told Becom to retrieve "the brothers," which Becom went to do. According to Becom, "the brothers" referred to male members of the Black Stone gang, including defendant, Lovett, Moore, and Terrence. Becom returned to Moore's garage with Jackson just as Moore's mother ordered the group to leave.

¶ 8     The group proceeded to a nearby school playground, where some "brothers" were located. There, Becom asked Ponquinette if she had sexual relations with Becom's boyfriend. Becom and Richardson then hit and kicked Ponquinette. After approximately five minutes, defendant, who

---

[1] Because Terrence Mobley and defendant share the same last name, we refer to Terrence by his first name.

was also present, broke up the fight, and Jackson helped Ponquinette up off the ground and walked away with her. Defendant, who was standing about five feet from Becom, told the group that Ponquinette "knows too much already about one service, we have to get rid of her, kill her or something, get her away from around here." Becom then left the playground.

¶ 9 Becom testified that defendant was a higher-ranking member of the gang with authority to issue orders to lower-ranking members, and that gang meetings, called "service[s]," were often held at a place called the "black bridge." Becom learned this information through her own affiliation with the Black Stones.

¶ 10 Becom was later arrested and charged in juvenile court with aggravated battery and unlawful restraint for her involvement in the incident. That case was dismissed in January 1993, but it was her understanding that in exchange for her testimony, the charges would be reinstated in juvenile court rather than adult court, and the State would recommend a period of probation for her guilty plea.

¶ 11 On cross-examination, Becom testified that the State did not charge her for soliciting men to have oral sex performed on them by Ponquinette. Becom was not present when Ponquinette was murdered and did not know whether defendant was present. Becom's father was a police officer, who did not know she was a gang member.

¶ 12 On redirect examination, Becom testified she did not know why her charges were dismissed in January 1993, but she agreed to have them reinstated in February 1994. When the police first questioned Becom on May 5, 1992, she denied knowing anything about what happened because she was afraid of her father's reaction, but the following day, she told the police the same story she testified to at trial.

¶ 13    Charles Carpenter, a Black Stones gang member, was at the playground on the evening of April 17, 1992, and testified at trial. On May 14, 1992, police interviewed Carpenter at his home, and he signed a statement that, at the playground, he heard defendant tell a group of young men to "Kill the b***." At trial, Carpenter denied hearing defendant say those words and testified that he just told the police what they wanted to hear so they would leave him alone.

¶ 14    Lloyd Bryant, another Black Stones gang member, testified that he was driving his motor vehicle near the playground on a Friday evening in April 1992 and stopped to talk with defendant. Bryant drove defendant to a liquor store, where they picked up Lovett. Defendant directed Bryant to drive to places near the Cal Sag Channel, and eventually, defendant and Lovett exited Bryant's vehicle and walked towards the "black bridge." Bryant testified before a grand jury that at some point during the drive, defendant stated that he was up to "nation business," which Bryant understood to mean gang business. At trial, Bryant testified he could not recall that conversation. On cross-examination, Bryant testified that he made some of his statements before the grand jury but only at the specific instruction of the prosecutor.

¶ 15    ASA Michael Baumel testified that in April 1992, he interviewed Carpenter at his home. Carpenter provided a verbal statement, which Baumel reduced to writing. Carpenter then signed the written statement. Baumel denied telling Bryant what to say in his testimony before the grand jury.

¶ 16    Lashonda Wilson testified that she observed Jackson intervene between Becom and Ponquinette at the playground and walk away with Ponquinette. Around 30 minutes later, Jackson walked by Wilson laughing and said that he was going to retrieve a sewer cover. Wilson then observed Moore, who stated, "We hit the b*** in the head with bricks and she still wouldn't die."

At that point, Ponquinette was lying on a railing by the bridge with her hands and feet bound. Lovett warned Wilson that she should leave if she did not want to see "that." As she walked away, Wilson passed Jackson, who was carrying a sewer cover. On cross-examination, Wilson testified that in exchange for her testimony, the State offered to recommend a sentence of probation for the charges of aggravated battery and unlawful restraint of Ponquinette.

¶ 17    Gary Kmetty, a petty officer in the United States Coast Guard, testified that on April 26, 1992, he removed Ponquinette's body from the Cal Sag Channel. Her feet were bound with green electrical wire.

¶ 18    Detective Tasso Kachiroubas of the Illinois State Police testified that he discovered green electrical wire tied to a sewer cover that he fished out of the Cal Sag Channel near the "black bridge."

¶ 19    The jury found defendant guilty of first degree murder, felony murder, aggravated kidnaping, and kidnapping. Defendant filed a motion for a new trial, which the trial court denied. The trial court merged the findings for felony murder into first degree murder and the findings for kidnapping into aggravated kidnaping. Following a sentencing hearing, the court described Ponquinette's murder as exceptionally brutal, heinous, and indicative of wanton cruelty, and imposed an extended term of 90 years' imprisonment for first degree murder consecutive to 5 years' imprisonment for aggravated kidnaping. We affirmed defendant's convictions and sentences on direct appeal. *People v. Mobley*, No. 1-94-4206 (1997) (unpublished order under Supreme Court Rule 23).

¶ 20    On September 8, 1998, defendant filed a postconviction petition alleging that his trial counsel was ineffective for failing to investigate and call individuals named at trial who would

have impeached the State's main witnesses by stating they were at the playground on the night of the incident and did not hear defendant order the victim's murder. On November 2, 1998, the circuit court summarily dismissed defendant's petition as both untimely and frivolous and patently without merit. Defendant appealed, and we reversed and remanded for an "evidentiary hearing." *People v. Mobley*, No. 1-98-4360 (2000) (unpublished order under Supreme Court Rule 23).

¶ 21 On remand, the circuit court appointed counsel for defendant and allowed counsel to file an amended postconviction petition raising additional issues over the State's objection that the amendments constituted a subsequent postconviction petition. The State filed a motion to dismiss, and the cause proceeded to an evidentiary hearing held between April 4, 2005, and June 30, 2005.[2] On October 19, 2005, the circuit court entered a written order explaining that this court had "reversed [the] first stage dismissal and ordered a third stage hearing." The circuit court concluded that defendant failed to make a "substantial showing that his constitutional rights were violated" at trial or during appellate proceedings. Defendant appealed, and we affirmed. *People v. Mobley*, No. 1-06-0349 (2008) (unpublished order under Supreme Court Rule 23).

¶ 22 On January 15, 2009, defendant filed a petition for a writ of *habeas corpus* in federal court alleging that trial counsel was ineffective, the trial court made erroneous evidentiary rulings, the evidence was insufficient to prove his guilt, and his sentence was excessive. On February 12, 2012, the district court denied the petition on the merits. *United States ex rel. Mobley v. Atchison*, 9 C 0516 (N.D. Ill. Feb. 27, 2012).

---

[2] The record does not show that the circuit court ruled on the State's motion to dismiss.

¶ 23     On September 19, 2014, defendant mailed a *pro se* motion for leave to file a successive postconviction petition. On April 7, 2015, the circuit court stated that the court clerk could not locate the filing and removed the case from the call.

¶ 24     On September 8, 2016, defendant refiled his *pro se* motion for leave to file a successive postconviction petition. The petition alleged that (1) the State knowingly used Becom's false testimony to obtain his conviction, (2) the State failed to disclose impeachment evidence in violation of *Brady,* and (3) trial counsel had a *per se* conflict of interest where he also represented a State witness in criminal matters in 1990 and 1992. In support of the *Brady* allegation, defendant attached his own affidavit averring that he met former Riverdale police officer Charles Hill in prison in March 2013. Defendant also attached Hill's affidavit, dated July 11, 2013, wherein Hill averred that in September 1993, he observed Becom in possession of a substance that he believed to be cocaine and engage in an apparent drug transaction. Hill arrested Becom, but was later informed that the State would not pursue charges against her, that she was a cooperating witness in another case with a plea deal in place, and that her father was a Chicago police officer whom the ASA knew personally. Becom was released and, to Hill's knowledge, the arrest and report number were never logged. Based on the foregoing, defendant argued that Becom provided false testimony, without which he would not have been found guilty.

¶ 25     On April 7, 2017, the circuit court denied defendant leave to file his successive petition, finding that he failed to satisfy the cause and prejudice test. Specifically, the circuit court noted that the information regarding Becom's drug arrest was available years prior to defendant's initial postconviction petition, and that defendant was not prejudiced by the State's failure to tender such

information because it had no exculpatory or impeachment value, there was no evidence that defendant requested it, and that it was immaterial to his guilt or punishment.

¶ 26 On appeal, defendant argues that we should remand his successive postconviction petition for second-stage proceedings where he established the cause and prejudice required to excuse his failure to include, in his original postconviction petition, a non-frivolous claim that the State violated *Brady* by failing to disclose that it did not charge Becom with possession of cocaine because she was cooperating in his case.

¶ 27 The Act provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991). The Act contemplates the filing of only one postconviction petition and "expressly provides that any claim of substantial denial of constitutional rights not raised in the original or amended petition is waived." *People v. Guerrero*, 2012 IL 112020, ¶ 15; 725 ILCS 5/122-3 (West 2016). Still, a defendant may file a successive postconviction petition where the proceedings on the initial petition were fundamentally deficient. *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992). In filing a successive postconviction petition, a defendant "faces immense procedural default hurdles" (*People v. Davis*, 2014 IL 115595, ¶ 14), and must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010); 725 ILCS 5/122-1(f) (West 2016)).

¶ 28 A court may grant a defendant leave to file a successive postconviction petition if he "demonstrates cause for his failure to bring the claim in his or her initial postconviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2016); *Tidwell*, 236 Ill. 2d at 152. Cause is demonstrated if a defendant identifies "an objective factor that impeded his *** ability to raise a specific claim during his *** initial post-conviction proceedings." 725

ILCS 5/122-1(f) (West 2016). Prejudice can be demonstrated if "the claim not raised during *** initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). A defendant bears the burden of establishing both cause and prejudice. *People v. Sutherland,* 2013 IL App (1st) 113072, ¶ 16. We review the circuit court's order denying defendant leave to file his successive postconviction petition under the *de novo* standard. *People v. Gillespie*, 407 Ill. App. 3d 113, 124 (2010).

¶ 29    Here, the circuit court found that defendant did not demonstrate cause for failing to include the *Brady* claim in his initial postconviction petition. However, we need not discuss cause to affirm because our decision is not dependent on the circuit court's reasoning (see *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008)), and in this case, it is clear that defendant cannot establish prejudice from the State's purported *Brady* violation.

¶ 30    *Brady* provides that the State must disclose evidence "favorable to the accused and material either to guilt or to punishment." (Internal quotation marks omitted.) *People v. Jarrett*, 399 Ill. App. 3d 715, 727 (2010). "A *Brady* claim requires a showing that: (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." 399 Ill. App. 3d at 728. In turn, "[e]vidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." 399 Ill. App. 3d at 728. To establish materiality, a defendant "must show the favorable evidence could reasonably be taken to put the

whole case in such a different light as to undermine confidence in the verdict." (Internal quotation marks omitted.) 399 Ill. App. 3d at 728.

¶ 31    We find that the circuit court properly denied defendant's motion for leave to file his successive petition where he failed to satisfy the cause and prejudice test. In this case, the purported exculpatory evidence, Becom's drug arrest, is not material because the jury was made aware that Becom benefitted from testifying against defendant. Becom testified that, in exchange for her testimony, she would be charged with aggravated battery and unlawful restraint in juvenile court, and the State would recommend probation. She also testified that the State did not charge her for soliciting men to have oral sex performed on them by Ponquinette. Additionally, Becom testified that she did not initially provide information about the offense to police. Despite hearing all of her testimony, the jury found Becom's identification of defendant credible. Defendant has not established prejudice simply because more impeachment information existed in addition to that which was presented at trial. The additional impeachment would not have changed the verdict in the case at bar.

¶ 32    Further, Becom testified that police questioned her on May 5 and 6, 1992, while Hill's affidavit asserts he arrested her in September 1993. Thus, Becom had already come forward with information regarding defendant's involvement in Ponquinette's murder well before she was arrested by Hill. In defendant's reply brief, he adds that police reports contained in the record on appeal show that no witnesses implicated him prior to Becom. However, a defendant cannot introduce new evidence on a postconviction appeal, and since defendant did not include this information in his proposed successive postconviction petition, it is not properly before this court. See *People v. Anderson*, 375 Ill. App. 3d 121, 139   (2007) (appellate   court   cannot   consider

evidence "for the first time on appeal without it first being attached to defendant's postconviction petition for initial scrutiny and evaluation at the trial court level").

¶ 33    Moreover, Becom was not the only witness to identify defendant as having given the order to kill Ponquinette. Carpenter provided a written statement to police in which he stated that defendant said, "Kill the b***" in reference to Ponquinette. Although Carpenter recanted his written statement at trial, "recanted prior inconsistent statements can be sufficient to support a conviction, even without corroborating evidence." (Internal quotation marks omitted.) *People v. Ealy*, 2019 IL App (1st) 161575, ¶ 28. Therefore, even if the additional evidence in Hill's affidavit were presented at trial to discredit Becom, the jury could still have found defendant guilty based on Carpenter's written statement. See *Ealy*, 2019 IL App (1st) 161575, ¶ 28.

¶ 34    Since the evidence the State purportedly withheld was not material, it did not prejudice the defendant. As a result, defendant's *Brady* claim is without merit. As such, defendant cannot demonstrate that the alleged *Brady* violation "so infected the trial that the resulting conviction or sentence violated due process" (725 ILCS 5/122-1(f) (West 2016)), and, therefore, the defendant cannot demonstrate the requisite prejudice to bring a successive postconviction petition. Accordingly, the circuit court properly denied defendant leave to file a successive postconviction petition.

¶ 35    For the forgoing reasons, we affirm the judgment of the circuit court.

¶ 36    Affirmed.