2025 IL App (1st) 232389-U

SECOND DIVISION
March 11, 2025

No. 1-23-2389

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 04CR3121 |
| | ) | |
| PHILLIP HARTSFIELD, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the second-stage dismissal of defendant's successive postconviction petition where defendant could not satisfy the cause element of the cause-and-prejudice test.

¶ 2    Defendant Phillip Hartsfield appeals from the trial court's second stage dismissal of his successive postconviction petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). Defendant was convicted of the January 2004 first degree murder and home invasion of the victim, Alejandro Martinez, an offense which defendant committed when he was almost 20 years old. In this appeal, he contends that he made a substantial showing that his

51-year sentence was a "mandatory life sentence" that is "unconstitutionally disproportionate to his individual circumstances *** in light of Illinois' evolving standards of decency" based on "specific circumstances attendant to his youth." The trial court granted the State's motion to dismiss defendant's successive postconviction petition at the second stage, finding that defendant's claim was foreclosed by recent supreme court precedent. For the reasons that follow, we affirm.

¶ 3    The record shows that at the 2005 jury trial, defendant was tried simultaneously before separate juries with codefendant Mohammed Abukhdeir. This court has extensively set out the facts in prior appeals, and we repeat them only as necessary to this appeal involving defendant's successive postconviction petition. See *People v. Hartsfield,* No. 1–05–2782 (March 28, 2007) (unpublished order pursuant to Supreme Court Rule 23); *People v. Hartsfield*, 2013 IL App (1st) 120155-U.

¶ 4    In sum, the evidence at trial established that the victim was having a party at his home in Chicago, during which the victim and other men made an insulting statement about defendant to Kristina Kasper, who was engaged in a sexual relationship with defendant. Kasper left the party with two friends, Candy Richmond and Claudia Garcia. Kasper and Richmond made several phone calls, and Garcia testified that in one of those calls Richmond gave someone the address of the party, and threatened to have someone at the party killed.

¶ 5    Defendant, accompanied by codefendant Abukhdeir, picked up Kasper and Richmond in his vehicle, and proceeded to the victim's home. Defendant and Abukhdeir left Kasper and Richmond in the vehicle while they went inside, with defendant carrying a silver automatic handgun. When they returned to the car, Richmond saw blood on Abukhdeir, and heard Abukhdeir say that "he ha[d] blood all over him." Defendant told Abukhdeir to "shut the f*** up," and Abukhdeir then said, "If it wasn't for me, you wouldn't have gotten through the back door."

Richmond also heard Abukhdeir tell defendant, "I hope you did it right." Defendant stopped the car at one point, took the gun from Abukhdeir, and put it in the trunk. The victim was found later that day, shot dead in his bed, after his brother attempted to wake him. The victim had been shot several times, including a fatal wound in his head. A detective testified that the back door showed signs of forced entry, where the door was split and appeared to have been kicked or punched to open.

¶ 6    The trial evidence also included testimony from Katherine Chrzan, who had also been engaged in a sexual relationship with defendant at the time of the offense. Chrzan testified that she was with defendant when he received a phone call, and Chrzan heard a female voice coming from the phone. Defendant told the caller that he would be there in 20 minutes, then left his house with a gun. When defendant returned, Chrzan asked him where he went, and defendant responded that if he told her what happened, she "wouldn't want to come around anymore" and that "if he ever went to jail for murder, he would kill himself." Another witness, John Waszak, testified that two days after the offense, Abukhdeir gave him a gun barrel, spent casings, and shells, and Waszak disposed of those items in Des Plaines River.

¶ 7    Following deliberations, the jury found defendant guilty of first-degree murder and home invasion. Codefendant Abukhdeir was acquitted. The trial court subsequently sentenced defendant to consecutive terms of 45 years for the murder conviction and 6 years for the home invasion conviction.

¶ 8    On direct appeal, defendant argued that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in admitting hearsay and the prior consistent statements of several witnesses through a detective; (3) the trial court erred in admitting gun and ammunition recovered from Abukhdeir's house; (4) the trial court erred in admitting testimony of a shotgun in

3

defendant's possession; (5) the trial court erred in admitting testimony that defendant was arrested outside the Maywood courthouse; and (6) the prosecutor made improper comments during closing arguments. This court affirmed. See *Hartsfield,* No. 1–05–2782 (March 28, 2007) (unpublished order pursuant to Supreme Court Rule 23).

¶ 9 In June 2008, defendant filed an initial *pro se* postconviction petition in the circuit court. Defendant was appointed counsel, who filed an amended postconviction petition, alleging that (1) trial counsel was ineffective for denying defendant his right to testify; (2) trial counsel was ineffective for failing to call a witness to refute Waszak's trial testimony; and (3) trial and appellate counsel were ineffective for failing to challenge the admission of Richmond's hearsay testimony about Abukhdeir's inculpatory statements. The trial court dismissed defendant's petition, finding that the claims lacked merit, and this court affirmed. *People v. Hartsfield*, 2013 IL App (1st) 120155-U.

¶ 10 Thereafter, on February 15, 2017, defendant filed a motion seeking leave to file a successive petition for postconviction relief. Defendant maintained that his 51-year sentence, imposed for an offense committed when he was 19 years old and without consideration of his youth and rehabilitative potential, violated the Eighth Amendment and the Proportionate Penalties Clause of the Illinois Constitution. Defendant also asserted that there was " 'newly discovered evidence' of a 'pattern' of 'coercion/torture' " by two of the investigating detectives, Detectives O'Brien and Halloran, and that the State's failure to disclose such evidence violated defendant's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant supported this claim with various allegations and complaints made against the detectives, and case dispositions from the Illinois Torture Inquiry and Relief Commission. Defendant also included an affidavit from Amber Crocket who averred that Richmond told her she had been coerced into giving police a false statement

against defendant.

¶ 11     On March 29, 2017, the trial court entered an order denying defendant leave to file the successive petition. Regarding the sentencing claim, the court found that defendant had demonstrated cause, but that his age, the circumstances of the offense, and defendant's active participation in the offense, distinguished him from defendants in other cases in which courts had found proportionate penalties violations, and accordingly, defendant failed to demonstrate prejudice.

¶ 12     As to defendant's claim of police coercion, the trial court construed the claim as involving both actual innocence and a *Brady* violation. The court found that defendant could not establish a claim of actual innocence, where Crocket's affidavit contained only hearsay statements that would be inadmissible, and where Crocket's allegations of coercion were dissimilar to the other allegations of abuse against the detectives. The court also rejected defendant's claim under *Brady*, finding that even if the State did fail to disclose the alleged evidence, there was not a reasonable probability that it would have altered the outcome of the proceedings.

¶ 13     Defendant filed a timely notice of appeal. On February 21, 2019, defendant filed an appellant's brief challenging the court's dismissal of the sentencing claim and the *Brady* claim in his successive post-conviction petition. Defendant abandoned any claim of actual innocence.

¶ 14     Thereafter, on June 12, 2019, defendant filed a motion for summary remand in the appellate court, requesting that this court "remand this cause with instructions to the circuit court to allow [defendant] leave to file his petition" to litigate his sentencing claim, where his "current *pro se* pleadings satisf[ied] the cause-and-prejudice test" for that claim. As for defendant's *Brady* claim, "[t]he parties agree[d] that [defendant] ha[d] not established cause and prejudice for the *Brady*/coercion claim, and [defendant] hereby withdraws that claim." The motion stated that the

Assistant State's Attorney had "reviewed the record and this motion and agrees to a summary disposition of the case as specified herein."

¶ 15 The motion was accompanied by an agreed order, which was entered by this court, providing that:

"the judgment of the Circuit Court of Cook County denying leave to file the successive post-conviction petition is reversed, and this cause is remanded to the Circuit Court with instructions to allow Appellant leave to file the petition solely with regard to his sentencing claim, and to appoint counsel for further post-conviction proceedings."

¶ 16 On remand, in November 2020, defendant filed a supplemental successive postconviction petition through counsel. Defendant argued that his

"*de facto* life sentence of 51 years' imprisonment violate[d] the Illinois Constitution's proportionate penalties clause as applied to him because such sentence, which was the result of various mandatory sentencing schema [*sic*], was imposed without the benefit of recent scientific developments concerning emerging adults, the mitigating factors of youth, and the extensive evidence of the [defendant]'s rehabilitation. In addition, no finding was made of irretrievable depravity."

¶ 17 Defendant pointed to the United States Supreme Court case of *Miller v. Alabama* and its progeny, which provided that, compared to adults, the juveniles showed higher "transient rashness, proclivity for risk, and inability to assess consequences" which "lessened a child's 'moral culpability' and enhanced the prospect that, as the years go by and neurological development occurs, his " 'deficiencies will be reformed.' " See *Miller v. Alabama,* 567 U.S. 460, 472 (2012).

Defendant contended that recent research suggested that such qualities extended to young adults between 18 and 20. Defendant further contended that he had a history of drug and alcohol issues, mental health issues, and "serious brain trauma" from injuries sustained during his youth, and that he had shown "evidence of rehabilitation" while in prison.

¶ 18    After defendant filed his amended petition, the court continued the matter several times by agreement of the parties, awaiting the Illinois Supreme Court's decision in *People v. House*, 2021 IL 125124.

¶ 19    In August 2022, the State filed a motion to dismiss defendant's successive post-conviction petition. In particular, the State relied on the recently decided Illinois Supreme Court case of *People v. Dorsey*, 2021 IL 123010, which held that "*Miller*'s announcement of a new substantive rule under the 8th amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause of the Illinois constitution." The State also contended that defendant's original sentencing hearing complied with *Miller*, and that the evidence defendant provided in support of his claim was, for the most part, generalized research on young adults and not specific to defendant individually.

¶ 20    On October 13, 2022, defendant responded that the State had waived any right to challenge the "cause" element, because it had previously conceded that defendant's "current *pro se* pleadings satisf[ied] the cause-and-prejudice test" for that claim. Defendant also asserted that the original sentencing hearing did not comply with *Miller*, and that he had provided "abundant evidence" regarding why he was "more like a juvenile than an adult at the time of the offense."

¶ 21    On December 19, 2022, the trial court held a hearing on the State's motion to dismiss. The State maintained that it had agreed to

   "sen[d] this matter back down from appeal around 2019, essentially so that

[defendant] could build up his record for a second-stage proceeding. We are at the second stage now on a successive post-conviction petition. Since that happened, the case[s] of *Peacock* and *Dorsey* came down.

*Dorsey* established most clearly that for petitioners such as this one, who is over the age of 18, there is not cause established years after the fact with this higher burden. *People v. Dorsey*, 2021 IL 123010 at paragraph 74, '*Miller*'s announcement of a new substantive rule under the [e]ighth [a]mendment does not provide cause for defendant to raise a claim under the proportionate penalties clause.' "

¶ 22    Defendant responded that the State had waived the argument that defendant had not established cause, and that the portion of *Dorsey* on which the State relied was mere "dicta." Defendant further asserted that his claim was not "go[ing] under *Miller*," but instead was relying on *People v. Harris*, 2018 IL 121932 and *People v. Thompson*, 2015 IL 118151.

¶ 23    The parties also presented their positions as to whether defendant had established prejudice, whether the prior sentencing hearing had been *Miller*-compliant, and whether defendant's evidence was sufficient to support his proportionate penalties claim.

¶ 24    After hearing argument from the parties, the court stated, "it's the court's position that the best way to really flush this out is through a third-stage hearing. And therefore, [the postconviction petition] will be advanced. The motion to dismiss is respectfully denied."

¶ 25    On June 26, 2023, the State filed a motion to reconsider the December 19, 2022, order, arguing that the recently decided Illinois Supreme Court decision in *People v. Moore*, 2023 IL 126461 "capped a series of cases that have foreclosed [defendant]'s claims." The State asserted that *Moore* "made it clear that [defendant], an adult at the time of his offense, cannot satisfy cause by invoking *Miller*."

¶ 26    Defendant responded on July 17, 2023, reiterating that the State was barred from challenging cause because it had previously agreed to summary remand. Defendant further asserted that "as part of the negotiations to secure remand of the case back to the circuit court for further proceedings on the emerging adult claim" defendant had "agreed to forego appellate review of his due process/*Brady* claim," and that he was "entitled to the benefit of the bargain that he had previously negotiated with the State."

¶ 27    The court held a hearing on the State's motion to reconsider on July 20, 2023.  The court asked the State about defendant's argument as to waiver, and the State responded that, at the time of the summary remand, the parties agreed that there "was no basis for the *Brady* claim" but that "cause and prejudice was established for [the sentencing issue] at the time and [the parties] asked that it be remanded by agreement." The State asserted that it was "not a waiver. That is an assessment of the legal landscape at the time." The State noted that in the

> "motion in support of the agreed appellate order, OSAD cited to *Harris*, said this is the legal landscape at the time. My office, the appellate division, agree[d] that was the legal landscape at the time and agreed to send it back for litigation. Sending it back for litigation is not a waiver. It is an assessment of cause and prejudice at the time."

¶ 28    The State further explained that the supreme court then decided *Dorsey*, in which it "said that *Miller* does not inform the proportionate penalties clause in the sense that it gives additional law to the proportionate penalties clause and establishes cause for filing a late or successive petition." Under that supreme court decision, defendant could have raised his proportionate penalties claim earlier, but "[h]e did not. *** [A]ccording to *Dorsey*, there is no way that he *** can establish cause in the cause and prejudice test for the proportionate penalties claim. Therefore,

9

we ask that this Court dismiss it."

¶ 29     Defense counsel responded that this was "an explicit waiver by the State in agreeing to the summary remand. *** Here, we have them agreeing specifically that [defendant] stated cause for his proportionate penalties claim coming back to the court." Defense counsel also asserted that defendant had "abandoned his coercion/*Brady* claim as well as part of the agreement" when he "[c]learly" would have been able to establish "cause to proceed" on that claim.

¶ 30     The State replied, that "essentially what [defense counsel] is asking this Court to do is put blinders on to the current state of the law" in order to advance the case to a third stage hearing. The court took the matter under advisement, setting the matter for ruling on September 14, 2023. The court explained that it

> "would like some time to be thoughtful about it and to do some of my own research and talk to some colleagues *** I understand, I'm sure [that defendant] wish[es] to have a decision from me, but I really want to try to get the right decision and do what is correct."

¶ 31     On September 14, 2023, the parties returned to the court for ruling. The court explained that the appellate court had entered an order, remanding the case with instructions to allow defendant

> "leave to file the petition solely with regard to a sentencing claim and to appoint counsel for further post-conviction proceedings.
>
> That has been done. [Defendant] has counsel and has filed additional pleadings. However, while the court has been addressing these issues on remand, the landscape around emerging adults and sentencing issues has changed, and there have been intervening decisions from an even higher court, that being the Illinois

Supreme Court, which has vitiated the underpinnings of the 1st District's mandate. As such, this Court is bound to follow the holdings of the Illinois Supreme Court. The State's motion to reconsider is granted and the State's motion to dismiss is granted."

¶ 32   The trial court then addressed defendant,

"I can imagine that you're disappointed, Mr. Hartsfield. This is not the final word. I assume your attorney will appeal. I can just tell you that I have read everything, I have read cases, I've consulted with so many colleagues on this, and I'm not unaware of what the ramifications for you of my decision is, but I do believe under the law this is the decision that I need to make."

¶ 33   Defendant protested, asking the trial court "[t]he evidentiary hearing was already supposed to have been done, correct?"

¶ 34   The trial court responded:

"I understand you have a different opinion and your attorney does, and I respect that. And if the appellate court says I am wrong, then I will be wrong. I'm not saying that I'm perfect. I have done the best job that I can to review the law at this time and what I am supposed to do. I've consulted with many of my colleagues who specialize in post-convictions. Everyone's in agreement that— *** I believe my colleagues—it's pretty united that this is what they are doing.

Again, if the appellate court says I am wrong, I will accept that. But sometimes the law and what seems fair to people don't always match up, but I have to follow the law because that's my job and that's what I'm doing today."

¶ 35   Defendant filed a timely notice of appeal from that order, and in this court, defendant

contends that his successive petition should be remanded for a third stage evidentiary hearing because the State was "procedurally barred from arguing that [defendant] did not demonstrate 'cause' " for his failure to raise the claim earlier, based on its previous agreement to remand his sentencing claim.

¶ 36    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2022)) provides a three-stage procedure for criminal defendants to raise constitutional issues about their trial or sentencing that could not have been raised on direct appeal. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. At the first stage, the postconviction court evaluates the petition and determines whether it is frivolous or patently without merit. *Id.* If the court determines that the petition is not frivolous or patently without merit, it is docketed for second-stage proceedings, during which counsel can be retained or appointed, and defendant must make a substantial showing of a constitutional violation. *Id.* If the petition makes a substantial showing of a constitutional violation, it advances to the third-stage evidentiary hearing where the postconviction court receives evidence and determines whether defendant is entitled to relief. 725 ILCS 5/122-6 (West 2022).

¶ 37    Only one postconviction proceeding is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). The bar against successive postconviction proceedings should not be relaxed unless (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *People v. Smith*, 2014 IL 115946, ¶ 30. Only the first exception is at issue in this case. Under the cause and prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL

111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). A showing of both cause and prejudice are required, and if a defendant cannot establish cause, we need not consider prejudice. *People v. Smith*, 2014 IL 115946, ¶ 37.

¶ 38     The cause and prejudice standard is higher than the normal first stage "frivolous or patently without merit" standard applied to initial petitions. *Id.*, ¶ 35. "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). In other words, to establish "cause" a defendant must articulate why he could not have discovered the claim earlier through the exercise of due diligence. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 72. A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48. It is defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted leave before further proceedings on his claims can follow. See *People v. Bailey*, 2017 IL 121450, ¶ 24. If a *prima facie* showing of cause and prejudice has been made and the successive is permitted to be filed, then the petition advances to the three-stage process under the Act, described above. *Id.* ¶ 26. "At that point, since the filed successive petition has already satisfied a higher standard, the first stage is rendered unnecessary, and the successive petition is docketed directly for second-stage proceedings." *People v. Thames*, 2021 IL App (1st) 180071, ¶ 78.

¶ 39     In general, "[t]he previous unavailability of a legal or factual basis for [a] claim can qualify as cause." *People v. Haines*, 2021 IL App (4th) 190612, ¶ 43. "A legal rule is novel, and its novelty is cause for omitting to raise the rule earlier, if the defendant did not have 'at his disposal the essential legal tools with which to construct his claim in time to present the claim' in the initial

postconviction proceeding." *Id.*, ¶ 44 (quoting *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996)).

¶ 40 At the time the parties' entered into the agreed order in this case, our supreme court had held that the *Miller* provided a "new substantive rule" and that the prior unavailability of *Miller* and its progeny "constitute[d] 'cause' " for the failure to previously bring a sentencing challenge. See *People v. Davis*, 2014 IL 115595, ¶ 42. In light of that authority, the parties agreed that defendant had established cause for defendant's sentencing claim, and requested this court remand for second stage proceedings.

¶ 41 Thereafter, however, our supreme court clarified that "*Miller*'s announcement of a new substantive rule under the eighth amendment does *not* provide cause for a defendant to raise a claim under the proportionate penalties clause." (emphasis added) *Dorsey*, 2021 IL 123010, ¶ 74. As the supreme court explained,

> "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Id.* (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59).

¶ 42 Our supreme court has repeatedly reaffirmed that conclusion. *People v. Clark*, 2023 IL 127273, ¶ 94 ("the *Miller* line of cases does not satisfy the 'cause' prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition, as *Miller*'s unavailability does nothing to explain why defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings."); *Moore*, 2023 IL 126461, ¶ 40 (holding that *Miller* "does not provide cause for a young adult offender to raise a claim under the proportionate

penalties clause" in a successive petition); *People v. Hilliard*, 2023 IL 128186, ¶ 28 ("*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause in a successive postconviction petition").

¶ 43 In this appeal, defendant briefly attempts to distinguish these cases on the basis that they involved defendants subject to discretionary sentences while he was subject to a minimum sentence of 51 years, a mandatory *de facto* life sentence. See *People v. Buffer*, 2019 IL 122327, ¶ 41. Defendant contends that the Supreme Court decisions providing that *Miller* and its progeny do not provide cause for an emerging adult proportionate penalties claim apply "only when a defendant receives a discretionary rather than mandatory life sentence." We disagree.

¶ 44 Appellate panels in this district and the fourth district have reviewed this issue and rejected the contention that there is a relevant distinction between young adults who received mandatory and discretionary sentences. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶¶ 45-63 (rejecting defendant's argument that *Moore* does not apply to defendants who received mandatory life sentences); *People v. Merriweather*, 2023 IL App (1st) 220440-U, ¶ 21 (finding the distinction between discretionary and mandatory life sentences "irrelevant" and that the supreme court precedent applies "to both claims involving discretionary life sentences and those involving a mandatory life sentence."); *People v. Leach*, 2024 IL App (4th) 230298, ¶¶ 85-88 (recognizing that "nothing in *Moore* suggested a distinction between discretionary and mandatory sentences"); *People v. Chavez*, 2025 IL App (1st) 231823-U, ¶ 16 ("It is clear from the supreme court's decisions in *Dorsey* and *Moore* that *Miller* does not provide cause for a young-adult offender who received a *de facto* life sentence to raise a proportionate penalties claim in a successive postconviction petition, regardless of whether the sentence was mandatory or discretionary."). We

agree with those cases, and find no basis to conclude that the holdings of *Dorsey* and *Moore* apply only to defendants with discretionary life sentences.

¶ 45    Defendant also contends that these cases do not foreclose an "argument that his sentence is unconstitutional under the Illinois proportionate penalties clause as applied to him based on his individual circumstances and in light of Illinois' evolving standards of decency." Defendant relies on *People v. Hamelin*, 2025 IL App (1st) 231263-U, in which this Court found that the defendant, who was 20 at the time of the offense, made a substantial showing that his natural life sentence violated the proportionate penalties clause, as applied, and remanded for a third-stage evidentiary hearing. *Hamelin*, however, concerned proceedings on an initial postconviction petition, during which a petitioner is not required to show cause and prejudice. While defendant is correct that *Dorsey* and *Moore* do not categorically bar proportionate penalties challenges, they do foreclose his ability to rely on *Miller* as cause for the failure to raise such a claim earlier.

¶ 46    Accordingly, in light of the above supreme court precedent, defendant "had the essential legal tools to raise his present proposed claim under the proportionate penalties clause when he filed his previous postconviction petition" (see *Moore*, 2023 IL 126461, ¶ 42), and the prior unavailability of the *Miller* line of cases does not provide cause for defendant to bring his proportionate penalties claim.

¶ 47    Defendant, however, attempts to avoid this conclusion by contending that the State was "procedurally barred from challenging" cause based on its prior agreement to remand the case for second stage proceedings. He asserts that this court "should not reevaluate whether [he] established cause" because the State conceded that he had demonstrated cause to raise his sentencing issue when agreeing to the summary remand order. He argues that dismissing his petition at the second stage for failure to demonstrate cause is "offensive to waiver rules and to the law-of-the-case

doctrine."

¶ 48    As stated above, in seeking to file a successive postconviction petition and to advance the petition for second stage proceedings, defendant was required to make a *prima facie* showing of "cause and prejudice" for the failure to raise his claim earlier. However, making that *prima facie* showing does not conclusively resolve the issue. See *Bailey*, 2017 IL 121450, ¶ 26. To the contrary, our supreme court has explained that the question of cause and prejudice remains applicable through all three stages of a successive petition, and that the lack of cause or prejudice can support a second-stage dismissal. *Id*. Even where the circuit court "determines that cause and prejudice have been adequately alleged and allows the petition to be filed," the State continues to "have an opportunity to seek dismissal of the petition on any grounds, *including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition*." (Emphasis added.) *Id. The prima facie* showing of cause required at the leave-to-file stage is a separate and lower burden than proving cause at second stage. See *id.*, ¶¶ 24-26.

¶ 49    Although the parties requested the entry of an agreed order "remand[ing] [the case] to the Circuit Court with instructions to allow [defendant] leave to file the petition solely with regard to his sentencing claim," agreeing that defendant's *pro se* pleadings "satisf[ied] the cause-and-prejudice test" for that claim, the State's agreement to remand the case for second stage proceedings cannot fairly be read to suggest a concession that defendant had made the necessary showing of cause and prejudice for all stages. Nor can our entry of that agreed order be read to be a definitive ruling as to cause and prejudice. See *Merriweather*, 2023 IL App (1st) 220440-U, ¶ 24 ("[E]ven if our prior order granting the agreed motion did include an implicit finding [that the defendant had established cause and prejudice], it included only an implicit finding that defendant had demonstrated sufficient cause and prejudice *to advance this matter to the second stage*."

(Emphasis added)).

¶ 50    Moreover, even if we could conclude that the State's agreement to remand this case for second stage proceedings amounted to an agreement that he had established the necessary cause at every stage of the postconviction proceedings, this court may not accept such a concession in the face of contrary supreme court authority. See *People v. Shief,* 2022 IL App (1st) 1210302-U, ¶¶ 6-7 (Where the State agreed that a petitioner had established cause, this court could not accept such a concession when it was contrary to the supreme court's decision in *Dorsey*. "While we appreciate the State's willingness to concede an issue when appropriate, we cannot accept its concession here, as it contradicts binding precedent."); see also *People v. Mobley*, 2022 IL App (1st) 201255-U, ¶ 29 (Although the State conceded that the defendant "established a *prima facie* showing of cause," based on the unavailability of *Miller* and its progeny at the time he filed his initial postconviction petition, the appellate court "disagree[d]" and was "not bound by a party's concession.").

¶ 51    Defendant, however, contends that the State "induced [him] to withdraw" his *Brady* claim "in exchange" for the State's agreement to remand the sentencing issue, relying on contract principles to assert that the State "should be bound to the deal it entered." The State responds that contract principles do not apply as there was no contract or bargain—the State "merely conceded a claim for which [it] had no contemporaneous good faith basis in the law to challenge." As for defendant's *Brady* claim, the State asserts that "nothing suggests that had appellate counsel proceeded on the *Brady* claim, the [State] would have challenged cause, in direct contradiction with caselaw, or that such a challenge would have been successful so as to entice appellate counsel into withdrawing the *Brady* claim."

¶ 52    Defendant relies on *People v. Whitfield*, 217 Ill. 2d 177 (2005) and *People v. Jones*, 2021

IL 126432 to support his contention that the agreed order was a "contract" which the State must fulfill. We find those cases distinguishable, as they both concerned negotiated guilty plea agreements, which our supreme court has explicitly characterized as "contracts." See *id.*, ¶ 21 ("Fundamentally, plea agreements are contracts."). Here, however, we find no support for defendant's contention that the agreed order to remand was a "contract," or that defendant abandoned his *Brady* claim "in exchange" for the State's agreement to remand the sentencing issue. Rather, the motion for summary remand indicates that the parties agreed, under the law in effect at that time, that defendant had demonstrated the *prima facie* showing of cause and prejudice for his sentencing claim, but that he had not made such a showing with respect to the *Brady* claim. We note that defendant has not suggested how that *Brady* claim was meritorious despite his prior concession that it was not. In these circumstances, we find no basis to conclude that defendant's counsel withdrew defendant's *Brady* claim for any other reason than counsel's assessment that it was not meritorious. See *People v. English*, 2013 IL 112890, ¶ 34 ("Appellate counsel's assessment of the merits of an issue, *** depends on the state of the law at the time of the direct appeal. *** Appellate counsel is not required to raise issues that he reasonably determines are not meritorious.").

¶ 53    We also reject defendant's assertion that allowing the State to challenge cause is "offensive to waiver rules and to the law-of-the-case doctrine." Waiver is defined as the "intentional relinquishment of a known right." *People v. Houston*, 2024 IL App (3d) 210324, ¶ 22. The waiver rule, however, is inapplicable "[w]here there has been a change in law due to a judicial decision or statutory alteration, after a case has been adjudicated and remains pending in the trial court or on direct appeal." *Tardi v. Henri*, 212 Ill. App. 3d 1027, 1038 (1991), citing *People v. Fernetti*, 104 Ill. 2d 19, 21-22 (1984). Here, the supreme court decisions in *Dorsey* and *Moore*

fundamentally changed the legal landscape as to whether *Miller* and its progeny provided cause for petitioners like defendant to raise a proportionate penalties claim in a successive postconviction petition, and accordingly, waiver does not apply.

¶ 54    Likewise, the law-of-the-case doctrine bars relitigation of an issue already decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395 (2002). Although defendant contends that the issue of whether defendant established cause "was decided when the appellate court issued [the] agreed order," we explained above that the agreed order remanded the case for second stage proceedings, and it did not definitively rule on whether defendant could establish cause or prejudice at later stages. Accordingly, the issue of whether defendant made the substantial showing of cause as required at the second stage, was not "an issue already decided" in this case, and the law-of the-case doctrine does not apply.

¶ 55    Moreover, even if the law-of-the-case doctrine could be applicable, the doctrine contains two exceptions: "(1) if a higher reviewing court makes a contrary ruling on the same issue after the lower court's decision, and (2) if a reviewing court determines that its prior decision was palpably erroneous." *Merriweather*, 2023 IL App (1st) 220440-U, ¶ 25, citing *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 27. As set forth above, our supreme court issued a contrary ruling on the issue of whether defendant could demonstrate cause, after this court's entry of the parties' agreed order. Accordingly, the first exception clearly applies, and the doctrine does not prevent the State from apprising the trial court of new binding supreme court precedent, nor does it prevent the court from applying that precedent.

¶ 56    Finally, we note that defendant makes a brief argument that the trial court's comments indicating that the court had discussed the issue with colleagues, demonstrates that the decision was "apparently driven by peer pressure," and that the trial court's "reliance on other judges'

apparent consensus on the issue was improper where it meant it did not consider the merits of [defendant's] individual claim."

¶ 57     Defendant, however, has shown no evidence, other than his own speculation, that the trial court's decision was "driven by peer pressure," or that the judge did not "consider the merits" of his claim. Defendant also has cited no authority supporting the inference that a judge consulting with other judges is improper, and we reject any such suggestion. See Ill. S. Ct. R. 2.9(A) (eff. Jan. 1, 2023) ("A judge may consult with *** other judges"). Instead, the record indicates that the trial court made the decision that it thought was required under the circumstances—a decision which, for the reasons set forth above, this court agrees was correct.

¶ 58     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 59     Affirmed.