1-23-1757

2025 IL App (1st) 231757-U
No. 1-23-1757

FIRST DIVISION
June 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01 CR 2948 |
| | ) | |
| MANUEL METLOCK, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Alfredo Maldonado, |
| | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Cobbs and Lavin concurred in the judgment.

**ORDER**

¶ 1 *Held:* The circuit court did not err in dismissing defendant's successive postconviction petition at the second stage of proceedings where defendant could not satisfy the cause element of the cause and prejudice test.

¶ 2 Defendant Manuel Metlock appeals the second-stage dismissal of his successive petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The circuit court initially denied the State's motion to dismiss defendant's successive petition and advanced the petition to the third stage of proceedings. It reconsidered its ruling upon the State's motion, filed six months later, which asserted that defendant lacked cause

to bring the successive petition. On appeal, defendant contends that the circuit court erred in granting the State's motion for reconsideration because (1) the State forfeited its claim that defendant lacked cause to file a successive postconviction petition as it did not argue the issue in its initial motion to dismiss, and (2) the issue of cause should not have been adjudicated during the third stage of proceedings. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by indictment with nine counts of first degree murder (720 ILCS 5/9-1(a)(1)-(3) (West 2000)), two counts of attempted first degree murder (*id*. § 8-4(a), 9-1(a)(1) (West 2000)), one count of aggravated battery with a firearm (*id*. § 12-4.2(a)(1) (West 2000)), and one count of attempted armed robbery (*id*. § 8-4(a), 18-2(a)(2) (West 2000)). The charges arose from events which resulted in the death of Loroxon Brown and injury to Relando Clark by firearm. At a 2004 jury trial, the State proceeded on three counts of first degree murder alleging a theory of felony murder.

¶ 5                                     A. Jury Trial

¶ 6        The facts of the case have been detailed in this court's order on direct appeal and those related to prior collateral proceedings. See *People v. Metlock*, No. 1-04-3268 (2007) (unpublished order under Supreme Court Rule 23); see also *People v. Metlock*, 2021 IL App (1st) 170946-U. Thus, we will only recount the facts necessary to resolve the issue on appeal.

¶ 7        At trial, Clark testified that on September 1, 2000, he, Brown, defendant, and Yakeeta Little spent the afternoon together visiting various places in Brown's vehicle. While traveling in the vehicle, defendant stated that they "could hit a lick" to "get some money," which Clark understood to mean a robbery. Defendant directed Brown to an alley on the south side of Chicago where Little exited the vehicle, and Clark saw that defendant was holding a firearm. Clark also heard a gunshot

and "play[ed] dead" by slumping over in his seat. Defendant removed him from the vehicle and laid him on the ground where defendant patted him down, looking for something. On the ground, Clark realized that he had been shot in the back. Brown also exited the vehicle and ran. Clark later identified defendant and Little in a police lineup.

¶ 8        Little's testimony was largely corroborative of Clark's, but she stated that while Brown was driving, defendant told Little that they "could get some money," showed her a firearm, and made a downward gesture to his right side. In the alley, Little exited the vehicle and went toward the house of one of her friends. When Little knocked on the door, she heard multiple gunshots, and saw Brown on the ground at the end of the alley. Little ran to her aunt's house, who drove her to defendant's mother's house. Defendant was already there, and Little told him that she did not believe Brown "made it." Defendant then apologized to Little and told her that he "got rid of" the firearm. Little later went to the police station and gave a statement.

¶ 9        Dr. John Scott Denton, deputy medical examiner, testified that he performed Brown's autopsy and determined that the cause of Brown's death was a gunshot wound to her back, and the manner of her death was homicide.

¶ 10        Defendant testified that a couple of days prior to September 1, 2000, Brown and Clark "fronted" him a half ounce of cocaine to sell. On September 1, 2000, defendant paid Brown $300 but still owed her money for the cocaine. Later, when they were all in Brown's vehicle, Little asked Brown to drop her at a friend's house on the south side of Chicago and directed Brown to the alley. When the vehicle stopped, Brown had a phone conversation wherein she stated that "she was about to handle some business." Little then placed her firearm between the driver's seat and passenger's seat and exited the vehicle. Clark asked defendant about the money defendant owed and reached for the firearm. Defendant was afraid so he reached for the firearm as well, and a struggle ensued.

During the struggle, the firearm discharged once. Defendant did not know who pulled the trigger, and did not intend to do so. Defendant also fired at Clark, who was on top of him, because he was afraid Clark would kill him. Brown exited the vehicle and ran, and defendant did not know that she had been shot. Defendant did not intend to rob Clark and Brown.

¶ 11　　　　　The jury found defendant guilty of first degree murder, and that during the commission of the offense, he personally discharged a firearm that proximately caused Brown's death.

¶ 12　　　　　　　　　　　　　　　　B. Sentencing

¶ 13　　　　　At a sentencing hearing, the State presented, *inter alia*, defendant's presentence investigation report (PSI), which stated that defendant was 20 years old at the time of the offense and had no prior felony convictions. Additionally, the PSI stated that defendant's childhood was "fair," he was not abused or neglected, and his relationship with both parents and his younger sister was "real close." The PSI further stated that of his immediate family members, only defendant's father had a substance abuse problem "off and on." No members of his immediate family had criminal backgrounds. Defendant was married with two children at the time that the PSI was prepared. According to the PSI, defendant's highest education enrollment in the eleventh grade, before he was expelled for disciplinary reasons, and defendant wished to pursue further education. The PSI additionally stated that defendant drank alcohol and smoked marijuana since he was 10 or 11 years old, and denied problems associated with his alcohol or marijuana consumption. Lastly, the PSI stated that defendant was a former member of the Mickey Cobras street gang from the age of 10 or 11 until 1997 or 1998.

¶ 14　　　　　Defense counsel argued that defendant grew up with a mother "who cared for him" and supported him, but his father was addicted to substances and was not a positive influence for defendant. Counsel argued that defendant was a "peaceful" person who tried "to overcome his

circumstances." Counsel objected to the minimum sentence of 45 years imprisonment, and contended that the court should have discretion to impose a shorter sentence, especially because defendant was a peaceful man who loved his family. The defense presented no testimony in mitigation and defendant declined to give a statement in allocution.

¶ 15     The court acknowledged defendant's "unremarkable" background, but stated that the evidence was overwhelming, and sentenced him to a total of 50 years' imprisonment, considering "first and foremost" his potential for rehabilitation. Defendant's sentence comprised a 25-year discretionary sentence for the first degree murder and the statutory mandatory 25-year firearm enhancement.

¶ 16                                C. Direct Appeal

¶ 17     On direct appeal, defendant argued (1) the trial court erred in permitting the State to withdraw charges of knowing and intentional murder, (2) the trial court erred in not instructing the jury on self-defense and second degree murder, (3) trial counsel was ineffective for not offering an instruction on attempted theft, (4) the State improperly used repetitious evidence of defendant's statements, and (5) the State made improper comments during closing arguments. We affirmed. *Metlock*, No. 1-04-3268 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 18                        C. Initial Postconviction Petition

¶ 19     In 2007, defendant filed a *pro se* postconviction petition alleging, *inter alia*, multiple claims of ineffective assistance of counsel. The circuit court advanced the petition to the second stage of proceedings and appointed postconviction counsel. In 2009, postconviction counsel filed a supplemental petition for postconviction relief, additionally arguing that trial counsel failed to object to the State's recitation of "completely made up witness testimony" during closing argument. Postconviction counsel further argued that appellate counsel provided ineffective

assistance for failing to raise the issue of trial counsel's ineffectiveness on appeal. The State filed a motion to dismiss, which the court granted. We affirmed. *People v. Metlock*, 2014 IL App (1st) 121874-U.

¶ 20                           D. Section 2-1401 Petition

¶ 21        In 2016, defendant filed a *pro se* petition for relief from judgment pursuant to 735 ILCS 5/2-1401 (West 2016), arguing that the prosecutor committed "fraud" during closing argument by misstating a trial witness's testimony. The court dismissed the petition, and this court allowed defendant's agreed motion for summary disposition, vacated the trial court's dismissal order, and remanded for further proceedings. See *People v. Metlock*, No. 1-16-2286 (May 18, 2018) (dispositional order).

¶ 22        In 2018, defendant filed an amended section 2-1401 petition, in which he argued his "fraud" claim and additionally asserted that his indictment and conviction were void because the State relied upon perjured grand jury testimony. The trial court dismissed the petition upon the State's motion. We affirmed and granted appellate counsel leave to withdraw as counsel. *People v. Metlock*, No. 1-19-1356 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 23        E. Motion for Leave to File Successive Postconviction Petition and Appeal

¶ 24        On November 3, 2016, defendant filed a *pro se* "expedited" motion for leave to file a successive postconviction petition, and a *pro se* successive petition. Defendant argued that his 50-year sentence was an unconstitutional *de facto* life sentence which violated the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois constitution. Defendant contended that because he was 20 years old at the time of the offense, the trial court

should have followed the requirements outlined in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), prior to sentencing him to a *de facto* life sentence.

¶ 25    Defendant attached his affidavit, describing violence he saw and experienced in his youth, his exposure to drugs and alcohol due to growing up in a "drug infested home," and his controlling and manipulative sexual relationship with his future wife, a woman with whom he had sexual relations when he was 15 years old and she was 23 years old. Defendant also averred that his crime was not premeditated, and he acted out of fear, but since his imprisonment, he has "matured" and worked to better himself. Defendant also attached certificates of achievement and diplomas for programs and classes completed during his incarceration, his high school equivalency certificate, and letters written by his family members and acquaintances regarding his character. Lastly, defendant attached several articles regarding the brain development of "emerging adults," finding that emerging adults are, neurologically and developmentally, more similar to juveniles than to adults.

¶ 26    On December 9, 2016, the circuit court denied defendant leave to bring a successive postconviction petition, finding that he did not satisfy the cause and prejudice test to bring the successive petition because *Miller* and *Montgomery* did not apply to him as he was not a juvenile offender and the trial court imposed a discretionary 50-year sentence rather than a mandatory life sentence. The court further commented that defendant was convicted as the shooter in the felony murder, rather than guilty under a theory of accountability.

¶ 27    Defendant appealed, and we affirmed the circuit court's denial of leave to file a successive petition regarding defendant's eighth amendment claim, but reversed the circuit court's ruling regarding defendant's proportionate penalties claim. *Metlock*, 2021 IL App (1st) 170946-U. We found that proportionate penalties claims such as defendant's must be determined on a case-by-

case basis. *Id*. ¶ 66. Thus, we remanded for defendant to develop a record to show that the sentencing court did not take into consideration his age and attendant circumstances in sentencing him. *Id*. ¶¶ 78-79; 83.

¶ 28                              F. Further Successive Petition Proceedings

¶ 29        On remand, the circuit court advanced the petition to the second stage of postconviction proceedings. On March 22, 2022, defendant's private postconviction counsel filed a supplemental successive postconviction petition, alleging that his 50-year sentence violated the proportionate penalties clause of the Illinois constitution. Postconviction counsel alleged that defendant's sentence was unconstitutional as applied to him, a 20-year-old offender, because it was a *de facto* life sentence where the court made no finding of irretrievable depravity, and the sentence included a mandatory enhancement provision, which "took away the judge's discretion" where defendant had no prior felony convictions. Postconviction counsel outlined recent behavioral and psychological research regarding emerging adults, which showed that emerging adults are more similar to juveniles than older adults. Postconviction counsel argued that defendant's individual characteristics, including his experiences of childhood adversity and his exposure to traumatic events, demonstrated that he was more similar to a juvenile than an adult. Lastly, postconviction counsel contended that significant evidence of defendant's rehabilitation existed, including defendant's near-completion of graduate studies during his incarceration.

¶ 30        In addition to his Rule 651(c) certification, postconviction counsel attached a summary of the research regarding the maturation of emerging adults related to the factors outlined in *Miller*, and a developmental analysis of defendant by developmental psychologist Dr. James Garbarino. Dr. Garbarino concluded that defendant was an "excellent candidate" for resentencing under *Miller*'s guidelines.

¶ 31        Postconviction counsel further attached a summary evaluation report of a psychological screening and vocational counseling program in which defendant participated for North Park Theological Seminary in 2019, concluding that defendant was on "an important path for growth" to become "a positive force" for himself and others. Postconviction counsel attached defendant's affidavit wherein he averred that his trial counsel recommended that he "omit" certain aspects of his difficult background because the State pursued the death penalty, and it was possible that if the panels knew about his background "they would feel that [he] wasn't worth saving." Postconviction counsel also attached affidavits from defendant's mother, sister, and wife, in which they averred to details about defendant's difficult youth. Postconviction counsel further attached numerous letters of support from defendant's teachers and program directors describing his participation in educational and spiritual programs, certificates of achievement, transcripts, and memoranda of program participation he obtained since the filing of his *pro se* successive postconviction petition, and his Department of Corrections disciplinary record showing one offense from 2005.

¶ 32        On May 11, 2022, the State filed a motion to dismiss defendant's successive postconviction petition, arguing *Miller* did not apply to defendant's eighth amendment claim because he was not a juvenile, and defendant's sentence did not violate the proportionate penalties clause of the Illinois constitution because the exhibits attached to defendant's supplemental successive postconviction petition contradicted the evidence presented in his PSI and the court took defendant's age and rehabilitative potential into consideration when sentencing him to a term on the "lower end of the range" for the murder.

¶ 33        On November 9, 2022, the court denied the State's motion to dismiss, finding defendant made a substantial showing of a constitutional violation, and advanced defendant's petition to the third stage of proceedings.

¶ 34    On May 23, 2023, the State filed a motion to cite additional authority and a motion to reconsider denial of the State's motion to dismiss, arguing that recently filed opinions of the Illinois Supreme Court ruled that emerging adults cannot establish cause to file successive postconviction petitions premised upon *Miller*-based challenges to their sentences under the proportionate penalties clause of the Illinois constitution. The State cited *People v. Clark*, 2023 IL 127273, released on February 2, 2023, and *People v. Moore*, 2023 IL 126461, released on May 18, 2023.

¶ 35    On July 3, 2023, postconviction counsel filed a response, contending that the State forfeited its argument regarding defendant's lack of "cause," because it did not assert the issue in its May 11, 2022, motion to dismiss. Postconviction counsel noted that the State should have known that the decisions were pending, and nevertheless did not raise the issue in its initial motion, nor ask the court to stay the proceedings until the decisions were issued.

¶ 36    The matter proceeded to a hearing on August 1, 2023, where the parties argued largely the same contentions raised in the briefs. Postconviction counsel asserted that the State's forfeiture was a procedural default of the issue, but had no response to the State's substantive argument regarding the rulings in *Clark* and *Moore*. The court took the matter under advisement and, ultimately, granted the State's motion for reconsideration on August 30, 2023, and dismissed defendant's successive postconviction petition. In ruling, the court found that the recent supreme court decisions clarified that defendant could not satisfy the cause and prejudice test for filing a successive petition, and his argument regarding forfeiture was inapplicable and "not persuasive." Defendant filed a timely appeal.

¶ 37                                    II. ANALYSIS

¶ 38    On appeal, defendant argues that the trial court erred in granting the State's motion to reconsider where the State forfeited its claim that defendant failed to demonstrate cause to file his

successive postconviction petition. He also argues that the court erred in granting the State's motion to reconsider because "cause" is no longer at issue during the third stage of postconviction proceedings.

¶ 39                              A. Post-Conviction Hearing Act

¶ 40        The Act provides a three-stage mechanism by which defendants can collaterally challenge their convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2016); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). "Successive petitions are highly disfavored, and the statutory bar will be relaxed only when fundamental fairness requires it." *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22.

¶ 41        Section 122-1(f) of the Act specifies that only one postconviction petition may be filed by a defendant without leave of court. 725 ILCS 5/122-1(f) (West 2016); *People v. Lusby*, 2020 IL 124046, ¶ 27. Leave of court "may be granted only if a [defendant] demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2016).[1] The defendant may show cause by "identifying an objective factor that impeded his or her ability to raise" the claim during initial proceedings, and prejudice by "demonstrating that the claim not raised" during the initial proceedings "so infected the trial that the resulting conviction or sentence violated due process." *Id*. The court makes this determination on the pleadings, prior to the first stage of postconviction proceedings. *People v. Bailey*, 2017 IL 121450, ¶ 23.

¶ 42        The cause and prejudice standard is "more exacting" than review of an initial postconviction petition. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 21. Both prongs of the

---

[1] Leave of court may also be granted if a defendant "asserts a fundamental miscarriage of justice based on actual innocence." *People v. Robinson*, 2020 IL 123849, ¶ 42. Defendant's motion and successive and supplemental petitions do not assert an actual innocence claim.

cause and prejudice test must be satisfied for a court to properly grant leave to file a successive petition. See *People v. Wilson*, 2023 IL 127666, ¶ 25. Leave to file a successive petition should be denied "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 43　　Once the court grants the defendant leave to file the successive petition, the matter progresses to second-stage proceedings, where the State may seek dismissal on any grounds, including the defendant's failure to prove cause and prejudice for not raising the claims in the initial postconviction petition. *Bailey*, 2017 IL 121450, ¶ 26.

¶ 44　　　　　　　　　　　　　B. Standard of Review

¶ 45　　In the case at bar, the circuit court granted the State's motion to dismiss defendant's successive postconviction petition at the second stage of proceedings. It did so after reconsidering its initial denial of the State's motion to dismiss. The dismissal of a successive postconviction petition without a third-stage evidentiary hearing is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. The circuit court's granting of a motion to reconsider based upon changes in the law, however, is reviewed for an abuse of discretion. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 80.

¶ 46　　　　　　C. Evolving Case Law Applying *Miller v. Alabama*, 567 U.S. 460 (2012)

¶ 47　　Defendant's claim arises from *Miller* and its progeny, which establish that the eighth amendment requires sentencing courts "to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth." *Clark*, 2023 IL 127273, ¶ 54. The basis for this requirement is that juveniles "have diminished culpability and greater prospects for reform," and are, thus, "less deserving of the most severe punishments." (Internal quotation marks

omitted.) *Miller*, 567 U.S. at 471. *Miller* discussed juveniles' lack of maturity, recklessness, vulnerability to peer pressure and negative external influences, and that they have characters and traits which are "not as well formed as an adult's" and, thus, "less likely to be evidence of irretrievable depravity." (Internal quotation marks omitted.) *Id*. In Illinois, the supreme court has expanded this rule to include *de facto* life sentences, defined as prison terms exceeding 40 years. See *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 48    The supreme court has not "foreclosed" emerging adults, like defendant, from raising as-applied *Miller*-based proportionate penalties challenges to mandatory life sentences in initial postconviction petitions based on the evolving science on juvenile maturity and brain development. *People v. Clark*, 2023 IL 127273, ¶ 87 (citing *People v. Thompson*, 2015 IL 118151, ¶ 44 (concerning a 19-year-old defendant sentenced to a term of natural life)); *People v. Williams*, 2024 IL 127304, ¶ 29. Such a claim requires an evidentiary record as to how the evolving science regarding maturity and brain development applies to the defendant's specific circumstances. *People v. House*, 2021 IL 125124, ¶ 29.

¶ 49    However, recent supreme court rulings have established that *Miller* and its progeny do not provide "cause" for emerging adult offenders to file successive postconviction petitions arguing proportionate penalties claims directed at their sentences. See *Moore*, 2023 IL 126461, ¶¶ 38-44 (denying leave to file successive petition for the defendants, emerging adult offenders, who argued that their sentences violated the proportionate penalties clause of the Illinois Constitution). Further, *Miller* did not "present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders." See *Clark*, 2023 IL 127273, ¶ 93; *People v. Hilliard*, 2023 IL 128186, ¶¶ 27-28.

¶ 50    Mindful of this framework, we turn to the merits of defendant's argument on appeal.

¶ 51       C. Whether the circuit court erred in granting the State's motion to reconsider

¶ 52       Here, we find the State did not err in reconsidering its denial of the State's motion to dismiss and dismissing defendant's successive postconviction petition. As noted, upon remand, the circuit court advanced defendant's successive postconviction petition to the second stage of proceedings. Defendant's postconviction counsel filed a supplemental postconviction petition with numerous exhibits directed at *Miller*'s applicability to defendant's specific circumstances. The State then filed a motion to dismiss, but the circuit court denied it and advanced the petition to the third stage of proceedings. Prior to the third-stage evidentiary hearing, however, the State filed a motion to reconsider the court's denial of its motion to dismiss, because recently decided Illinois Supreme Court decisions in *Clark* and *Moore* established that defendant, as an emerging adult, could not satisfy the cause element of the cause and prejudice test by invoking *Miller*. During the hearing, postconviction counsel did not argue that the substance of *Clark* and *Moore* did not apply to defendant, but rather that the State forfeited its argument regarding defendant's lack of cause for not raising it in its motion to dismiss. The court did not find defendant's forfeiture argument persuasive and granted the State's motion to reconsider.

¶ 53       On appeal, defendant argues roughly the same issue as during the reconsideration hearing, namely, that the State forfeited its claim that defendant lacked cause to file his successive postconviction petition. In doing so, defendant analogizes the State's failure to raise "cause" as its forfeiture of an affirmative defense or nonjurisdictional procedural defect, such as untimeliness. See *People v. Allen*, 2015 IL 113135, ¶ 33. However, a defendant's lack of cause to file a successive postconviction petition is not a procedural defect which the State must assert in its motion to dismiss at second-stage proceedings. Rather, a court will first make an independent determination on the legal question of whether the defendant alleged adequate facts for a *prima*

*facie* showing of cause and prejudice to advance the petition. See *Bailey*, 2017 IL 121450, ¶ 25. Then, the State may seek dismissal, including for the defendant's failure to prove cause for not raising the claims in the initial petition. See *id*., ¶ 26.

¶ 54    Additionally, "[t]he purpose of a motion to reconsider is to bring to the [circuit] court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence not available at the time of the hearing." (Internal citation omitted.) *People v. Arze*, 2016 IL App (1st) 131959, ¶ 85. A criminal court has "inherent power to reconsider and correct its rulings, and this power extends to interlocutory rulings." *People v. Johnson*, 2017 IL 120310, ¶ 33. The denial of a motion to dismiss is interlocutory in nature, which may be "modified or revised" at any time prior to final judgment. *Commonwealth Edison Co. v. Illinois Commerce Commission*, 368 Ill. App. 3d 734, 742 (2006); see Ill. S. Ct. R. 304(a) (eff. March 8, 2016). The circuit court, thus, had the power to reconsider its denial of the State's motion to dismiss in light of the changes in the law outlined in the State's motion to reconsider. See *id*.

¶ 55    In his reply brief, defendant nevertheless contends that the issue on appeal regards the State's forfeiture of its "cause" argument by not asserting it in its May 2022 motion to dismiss rather than the court's ability to revise its interlocutory ruling. We note that postconviction proceedings are civil in nature, and civil rules and procedures "apply only to the extent they do not conflict with the Post-Conviction Hearing Act." *Bailey*, 2017 IL 121450, ¶ 29. In the civil context, generally, new legal theories raised for the first time in a motion to reconsider are forfeited. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. However, this rule does not apply to arguments related to a change in the law, which is a proper purpose of a motion to reconsider. See *Lake County Grading Company, LLC v. Forever Construction Company, Inc.*, 2017 IL App (2d) 160359, ¶ 42 (an issue regarding a change in law raised for the first time in the motion to

reconsider was not forfeited); see also, *Tardi v. Henri*, 212 Ill. App. 3d 1027, 1038 (1991) ("Where there has been a change in law due to a judicial decision or statutory alteration, after a case has been adjudicated and remains pending in the trial court or on direct appeal, the waiver rule is inapplicable.").

¶ 56     Indeed, the supreme court decisions of *Clark* and *Moore* "changed the legal landscape" as to whether *Miller* provided cause for emerging adults such as defendant to raise a proportionate penalties claim in a successive postconviction petition. See *People v. Hartsfield*, 2025 IL App (1st) 232389-U, ¶ 53. The *Hartsfield* court considered a similar issue: whether an agreed order filed in the appellate court which remanded a successive postconviction petition for second-stage proceedings constituted waiver of a challenge to "cause." *Hartsfield*, 2025 IL App (1st) 232389-U, ¶ 47. We found that the court did not err in granting the State's motion to reconsider filed six months after the court's denial of its second-stage motion to dismiss, because changes in the law established that *Miller* could not provide cause to file a successive petition for an emerging adult defendant. *People v. Hartsfield*, 2025 IL App (1st) 232389-U, ¶ 53.[2] Thus, the State did not forfeit the issue, and the circuit court did not abuse its discretion in granting its motion to reconsider. See *Horlacher*, 2017 IL App (1st) 162712, ¶ 80.

¶ 57     Defendant also claims that the court erred in granting the State's motion to reconsider because the case had already advanced to the third stage of proceedings, when the issue of "cause" was no longer applicable. In arguing this, defendant relies upon *People v. Bailey*, where the supreme court found that no provision in the Act provides for an evidentiary hearing on the issue of cause and prejudice, but rather the determination must be made on the pleadings. See *Bailey*,

---

[2] Under Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025), unpublished orders entered on or after January 1, 2021, may be cited for persuasive purposes.

2017 IL 121450, ¶¶ 23-25. Here, the matter was not resolved pursuant to a third-stage evidentiary hearing, but upon reconsideration of the State's motion to dismiss at the second stage of proceedings. As such, the court did not err in dismissing defendant's successive petition.

¶ 58                                    III. CONCLUSION

¶ 59         For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 60         Affirmed.